UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JASON E. PALM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 07-102-B-H |
| | ) |
| STATE OF MAINE, et al., | ) |
| | ) |
| Defendants | ) |

*Recommended Decision on*
*County Defendants' Motion for Partial Dismissal (Docket No. 28) and Motion for*
*Partial Summary Judgment (Docket No. 26)*

In this diversity action Jason Palm alleges:

> On July 23, 2005, Plaintiff was forced to contend and deal with an exceedingly traumatic situation caused completely by the Kennebec County Sheriff's Office and the Maine State Police in which directly after leaving my home to follow an ambulance to the hospital with my 74 year old mother-in-law who claimed to have been having chest pains, approximately 23 members of the Maine State Police tactical and K-9 units along with an untold number of Maine State Troopers and additional police personnel from the Kennebec County Sheriff's Office disregarded and acted outside the law by illegally descending and gathering on my family's 5 acre estate in Fayette, Maine without any legitimate reason or cause and after trapping my wife and pets in the house for approximately 10 hours proceeded for the most part to try to destroy our newly built home by blowing out practically every window, skylight and exterior glass door which they could reach while falsely staging it as a "police stand off" situation by using my wife and pets who were still inside the house.

(J. Palm 1st Am. Compl. ¶ 17.)[1]

---

[1] Since filing this first amendment to his complaint Palm has filed a motion to amend his complaint again accompanied by a 151-page, 436-paragraph proposed amended complaint. These defendants have not filed an opposition to that second amendment, the State Defendants have all but acquiesced to the amendment, and, in a separate order, I have granted Palm's request to amend yet again. Nothing in the Second Amended Complaint changes the outcome of this recommended decision.

Some of the defendants -- who I identify under the umbrella of "the County Defendants," a term encompassing the Kennebec County Sheriff's Office, Everett Flannery, Michael Durham, and Jeffrey Wrigley – have moved for partial dismissal or partial summary judgment. (Docket Nos. 26 & 28.) I recommend that the Court deny the County Defendants summary judgment of Palm's state law tort claims on the grounds that Palm failed to comply with the notice requirement of the Maine Tort Claims Act but that the Court grant the County Defendants summary judgment on Palm's state law tort claims against them in their official capacity. My reasons follow.

## *Discussion*

The County Defendants' motion argues that Palm had not complied with the notice provisions of 14 M.R.S.A. § 8107 and, as a consequence, his state law tort claims are barred. (County Defs.' Mot. at 1 -5.) In the alternative they argue they are immune from suit under the Maine Tort Claim Act and that there is no exception to that immunity. They have set forth the following factual record pertaining to these legal questions.

### *Applicable Pleading Standard*

The County Defendants style their motion as a motion to dismiss and, in the alternative, a motion for summary judgment. Given that both sides must, in the end, rely on record evidence in support of and in defense of their arguments, I analyze the claims under the summary judgment standard.[2]

---

[2] In their motion the County Defendants assert that complying with the notice requirement is a precondition for filing a civil action and, thus, must be pled under the directive of Federal Rule of Civil Procedure 9(c) and, as Palm did not plead that he complied with the notice provision, his tort claim counts should be dismissed. Beyond this bald assertion, the defendants do provide any authority for this reading. This court need not ferret out legal support for a moving party's argument; what is more, my brief research into the question uncovered precedent that suggests that proof of compliance can be demonstrated by a plaintiff after the complaint if filed, when push comes to shove. See Ferris v. County of Kennebec, 44 F.Supp.2d 62, 65 n.1 (D. Me. 1999).

"Summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" United States v. Union Bank For Sav. & Inv. (Jordan), 487 F.3d 8, 17 (1st Cir.2007) (quoting Federal Rule of Civil Procedure 56(c)). I draw all reasonable inferences in favor of Palm, but where he bears the burden of proof, he "'must present definite, competent evidence" from which a reasonable jury could find in [his] favor." Id. (quoting United States v. One Parcel of Real Prop., 960 F.2d 200, 204 (1st Cir.1992)).

### *Statement of Material Fact*

The Maine County Commissioners Association Self-Funded Risk Management Pool (Risk Pool) is a public self-funded pool established pursuant to 30-A M.R.S.A. ch. 117. (SMF ¶ 1; Ulmer Aff. ¶ 2.) Kennebec County is a Named Member of the Risk Pool and is provided with insurance-type coverage pursuant to a document entitled "Maine County Commissioners Association Self-Funded Risk Management Pool Coverage Document" ("Coverage Document"). (SMF ¶ 2; Ulmer Aff. ¶ 3; Devlin Aff. ¶ 3.) The Coverage Document specifically excludes any coverage for any cause of action seeking tort damages for which the County is immune pursuant to the Tort Claims Act, and limits coverage to those areas for which governmental immunity is expressly waived by the Tort Claims Act. (SMF ¶ 3; Ulmer Aff. ¶¶ 4-7.) Other than the insurance-type coverage provided to Kennebec County under the Risk Pool's Coverage Document, Kennebec County has not procured insurance against liability for any claim against the County or its employees for which immunity is not otherwise waived under the Maine Tort Claims

3

Act. (SMF ¶ 4; Ulmer Aff. ¶ 8; Devlin Aff. ¶ 4.) No notice pursuant to 14 M.R.S.A. § 8107 was ever served on Defendants Kennebec County, Kennebec County Sheriff's Department, Everett Flannery, Michael Durham or Jeffrey Wrigley by Plaintiff. (SMF ¶ 5; Devlin Aff. ¶ 5; Flannery Aff. ¶ 3; Durham Aff. ¶ 3; Wrigley Aff. ¶ 3.)

Palm has responded to the motion to dismiss, attempting to demonstrate through six exhibits, five of them letters, that he has provided sufficient notice to the defendants. (Pl.'s Obj. at 1-4.) The County Defendants argue that four of these exhibits should be stricken because they contain inadmissible hearsay and are un-authenticated. (Reply SMF ¶¶ 2, 3.) In response, Palm argues that the letters written by him or his family members would be easily authenticated as those letters were written by witnesses of the events. (Pl.'s Sur-Reply SMF ¶ 2, 3.)[3]

*The Notice Requirement*

Section 8107(1) of title 14 of the Maine Revised Statutes sets forth the following notice requirement for claims under the Maine Tort Claims Act:

> **Notice requirements for filing.** Within 180 days after any claim or cause of action permitted by this chapter accrues, or at a later time within the limits of section 8110, when a claimant shows good cause why notice could not have reasonably been filed within the 180-day limit, a claimant or a claimant's personal representative or attorney shall file a written notice containing:
> **A.** The name and address of the claimant, and the name and address of the claimant's attorney or other representative, if any;
> **B.** A concise statement of the basis of the claim, including the date, time, place and circumstances of the act, omission or occurrence complained of;
> **C.** The name and address of any governmental employee involved, if known;

---

[3] He also argues that the two responsive letters directed to his mother-in-law, Louise Doyle, could be authenticated by making phone calls to the authors. (Id. ¶ 4.) As discussed below, the authenticity of these two letters has no bearing on the disposition of this pending motion.

4

>    **D.** A concise statement of the nature and extent of the injury claimed to have been suffered; and
>    **E.** A statement of the amount of monetary damages claimed.

14 M.R.S. § 8107(1).

With respect to the 180-day timeframe for complying with this notice requirement, all of Palm's claims are tethered to the events of July 23, 2005. The 180 notice period therefore ended on January 19, 2006.

Exhibit A to Palm's objection to the motion to dismiss is a letter dated October 15, 2005, addressed to Sheriff Flannery of the Kennebec County Sheriff's Office and the Chief of the Maine State Police. (Docket No. 38-2.) In this missive, signed by Charlotte Palm over the typed names of Jason and Charlotte Palm, the complaint is as follows:

> This letter is in regard to the events which took place at our home at 127 Shore Road, in Fayette, Maine on July 23, 2005 in which my husband and I were completely surprised to learn of the total lack of respect for citizens of Maine and Kennebec County by the police personnel from both the Kennebec County Sheriff's Office and the Maine State Police, to say the very least and to our horror.
>
> Because of this and for now, this letter is to serve as "formal notice" to both of you and the personnel at the Kennebec County Sheriff's Office and the Maine State Police that unless we are immediately reimbursed for expenses we have incurred relative to the damage illegally caused to our home at 127 Shore Road in Fayette, Maine by police personnel from the Kennebec County Sheriff's Office and the Maine State Police on the evening of July 23, 2005, we will take legal action against the Kennebec County Sheriff's Office, and the Maine State Police, yourselves and specific members of the Kennebec County Sheriff's Office and the Maine State Police police personnel to recover same expenses and we will include any and all medical bills and other related expenses and losses for both myself and my husband, Jason Palm.
>
> To date such expenses total approximately $70,000.00.
>
> If we did not receive a reply regarding this matter, we will proceed to take any and all legal actions available to remedy this matter in full.

(Docket No. 38-2 at 1.)   Although the Palms' address is included in the body of this letter, it is not set forth separately in the header or the footer of the letter.

Palm's Exhibit B is a letter signed by Louise Doyle, Jason Palm's mother-in-law. This letter is dated January 19, 2006, and according to Palm was sent express mail and received on January 20, 2006. (Resp. SMF ¶ 2.)  Addressed to Sheriff Flannery, in this letter Doyle describes her discontents with the manner that law enforcement personnel handled the situation on July 23, 2005, and threatens:

> I will wait ten business days for a reply from you.  Should you ignore this letter or refuse to reimburse us for the above expenses your Deputies cause, we will have no alternative but to take legal action against the Kennebec County Sheriff's Office, the Maine State Police, the State of Maine, and District Attorney Evert Fowle.

(Docket No. 38-3 at 2.)  In his response to the statement of fact Palm also represents that he sent a copy of this letter to the U.S. Attorney General, the Department of Justice, Governor Baldacci, the Federal Bureau of Investigation, all of the Kennebec County Commissioners, Maine Attorney General Steven Rowe, District Attorney Evert Fowle, the Maine State Police Internal Affairs department, Deputy Jeffrey J. Wrigley, Deputy Michael Durham, Maine General Hospital, St. Mary's Regional Hospital, and Judge Kirk Studstrup.  (Resp. SMF ¶ 2.)

Palm's Exhibit C is a letter attributed to Jason Palm, but not signed by Palm, dated January 21, 2006, and is addressed to Sheriff Flannery and includes a heading that it was delivered by certified mail.  The attached certified mail receipt indicates that it was posted on January 26, 2006.  (See Docket No. 38-5.)  In this four-page missive Palm faults Kennebec County Sheriff's Office and Maine State Police Responders for the manner in which they responded to his 9-1-1 call; complains that Deputy Wrigley's

reports on the incident included fabricated statements attributed to Palm; that Jason Palm was lied to concerning his wife's status which contributed to Jason Palm's statement about his concern for his wife's safety being inaccurate; claims that "practically every one" of his wife's civil rights were violated; asserts that the actions of law enforcement personnel did not comply with the Sheriff's office mission statement; and opines that Doyle's January 19, 2006, letter "served as an 'official complaint' against Michael Durham, Jeffrey Wrigley, and the others involved" from the Sheriff's office.  (Docket No. at 1-3.)

Palm also attaches two letters addressed to Doyle, one from an internal affairs representative for the Maine State Police (Docket No. 38-6.) and one from a regional court security supervisor for the Maine District Court (Docket No. 38-7).  These two letters do nothing to advance Jason Palm's argument that he provided sufficient notice to the County Defendants.

In his pleadings related to this motion Palm has not attempted to make a showing of "good cause why notice could not have reasonably been filed within the 180-day limit" that would warrant consideration of whether or not the two letters, Exhibits B and C, indisputably received – if received at all – by the County Defendants after the running of the 180-days are good.  See 14 M.R.S. § 8107(1); id. § 8107(5).

Therefore, the only question is whether or not the October 15, 2005, letter signed by Charlotte Palm satisfies the § 8107(1) notice requirement.  The County Defendants rely on Maine Rule of Civil Procedure 4(d)(4) which provides for service of a complaint "[u]pon a county, by delivering a copy of the summons and of the complaint to one of the county commissioners or their clerk or the county treasurer."  Me. R. Civ. P. 4(d)(4).  However, in Robinson v. Washington County, 529 A.2d 1357 (Me. 1987, the Maine Law

7

Court addressed an argument on four legs with this one. In that action the plaintiff mailed a letter directly to the Sheriff at the Washington County Courthouse and this "letter purported to notify Washington County of her intention 'to bring a civil action against the County of Washington and/or their officers, employees and agents.'" Id. at 1360. "The plaintiff's letter clearly does not comply with the literal requirement of M.R. Civ. P. 4(d)(4), requiring delivery of the complaint and summons 'to one of the county commissioners or their clerk or the county treasurer,'" the Law Court observed, but added that "the notice requirements of the Maine Tort Claims Act require substantial rather than literal compliance." Id. In finding substantial compliance on the facts, The Law Court reasoned:

> The plaintiff's failure to notify the governmental entities listed in Rule 4(d)(4) is not so fundamental as to require that the notice be held invalid. In this case, the written notice was delivered directly to one of the litigants, namely, Sheriff Prescott, the chief law enforcement officer for Washington County. See 30 M.R.S.A. § 1001(1) (1980). No prejudice to any of the defendants has been demonstrated at this stage of the proceedings. We therefore conclude that without such a showing of prejudice the plaintiff's letter adequately complies with the notice provision of the Tort Claims Act.

Id. See also Hall v. Town of Kittery, 556 A.2d 662, 664 (Me. 1989).

The only argument by the County Defendants that warrant any further discussion apropos the adequacy of notice via the October 15, 2005, letter is the fact that while the names of both Jason and Charlotte Palm appear in the type-written signature block, it appears that only Charlotte Palm's signature is on this document. The letter uses the pronoun "we" and is clearly meant to assert "formal notice" – by its own terms -on the behalf of both spouses. Compare Papperman v. Barrett, 661 A.2d 1124, 1126 & n.3 (Me. 1995); Hall, 556 A.2d at 663-64. It contains the Palms' address; a concise statement of the basis

8

of the claim, clearly identifying the event and conduct of which he complains; targets the law enforcement personnel responsible for the events on the evening of July 23, 2005; pinpoints the damage to their home and their medical bills and other related expenses as requiring reimbursement; and states monetary damages of approximately $70,000. The County Defendants assert: "A relative is not permitted to file a claim on behalf of a claimant unless the claimant is incapacitated or a minor of which there is no evidence here." (County Defs.' Reply Mem. at 3-4.) However, they cite to no legal authority for this assertion. The statute itself does not even mention that the notice of claim must be signed. See 14 M.R.S. § 8107(1). It does say the notice may be filed by "a claimant's personal representative or attorney." I could find no case law that supports the defendants' argument that an otherwise conforming notice fails because of an irregularity in a letter's signature block.

### *Official Capacity Immunity*

The County Defendants also seek partial judgment on their argument that the official capacity claims against the Kennebec County Sheriff's Office/Sheriff Flannery, Michael Durham, and Jeffrey Wrigley are barred because of the immunity provision of the Maine Tort Claims Act. Section 8103 of the act provides: "Except as otherwise expressly provided by statute, all governmental entities shall be immune from suit on any and all tort claims seeking recovery of damages. When immunity is removed by this chapter, any claim for damages shall be brought in accordance with the terms of this chapter." 14 M.R.S. § 8103(1). As the County Defendants note, none of the exception to immunity set forth in § 8104-A apply. See 14 M.R.S. § 8104-A(1)-(4) (use of vehicles, machinery, and equipment; public buildings; pollutant discharge; and road and street

construction, cleaning, and repair).  Palm has not created a genuine dispute of fact vis-à-vis the County Defendants' assertion that they have not waived their immunity.

Palm's argument in response to this facet of the defendants' dispositive motion entirely misses the mark. He discusses the doctrine of qualified immunity (Pl.'s Obj. at 5-10), a potential defense that could only pertain to <u>federal claims</u> against the defendants in an individual capacity.  The County Defendants have made it quite clear that this part of their dispositive motion is targeted at Palm's state law tort claims against them in their official capacities.  (See Defs.' Mot. at 4-7; Defs.' Reply Mem. at 5-6 & n.6.)

Accordingly, I conclude that the County Defendants are entitled to summary judgment on Palm's state law tort claims against them in their official capacity.

## *Conclusion*

For the above reasons, I recommend the Court deny the County Defendants' motion to the extent it seeks dismissal of all claims.  I further recommend that the Court deny the County Defendants summary judgment of Palm's state law tort claims on the grounds that Palm failed to comply with the notice requirement of the Maine Tort Claims Act.  However, I recommend that the Court grant the County Defendants summary judgment on Palm's state law tort claims against them in their official capacity.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within ten (10) days of being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

       Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

December 5, 2007.                                           /s/ Margaret J. Kravchuk
                                                                      U.S. Magistrate Judge

Case 1:07-cv-00102-DBH   Document 52   Filed 12/05/07   Page 11 of 11   PageID #: 703